

STATE OF WASHINGTON

2014 MAR 10 AM 10: 54

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 69242-9-I |
| | ) | |
| DANIEL VALENTE, | ) | |
| | ) | |
| Appellant/Cross Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FUKIKO VALENTE, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent/Cross Appellant. | ) | FILED: March 10, 2014 |
| | ) | |

VERELLEN, J. — A trial court has broad discretion to award maintenance to address the medical needs of a spouse, but reserving jurisdiction to revisit maintenance if the disease worsens is problematic. When the trial court finds only that a spouse "may" incur future medical expenses and rehabilitation costs, it is an abuse of discretion to make a "placeholder" award of nominal maintenance in order to reserve jurisdiction.

Here, the trial court awarded Fukiko Valente (Nao) nominal maintenance of $100 per month from the time she turns 72 years old until the death of either party or her remarriage. The sole purpose of this award was to extend jurisdiction over the parties should her multiple sclerosis (MS) and rheumatoid arthritis (RA) deteriorate, resulting in increased expenses. Especially in the absence of any findings that her medical conditions were likely to deteriorate or that her costs were likely to increase, this award was an abuse of discretion and must be reversed. We affirm the remainder of the

maintenance award and the property division because they were within the trial court's discretion. Additionally, we decline to award attorney fees on appeal.

## FACTS

Daniel Valente (Dan) and Nao married in Japan in 1985.[1] During their marriage, Dan started a very successful business, Naodan Chartering, Inc. (Naodan). Nao primarily stayed home and raised their two children. In 2005, Nao was diagnosed with MS and RA.

Dan petitioned for dissolution in April 2011. The main issues at trial were property distribution and maintenance. Although the parties agreed that Naodan should be awarded to Dan, they disagreed on the value of the business and each presented expert witnesses to support their respective valuations. Nao also presented evidence of her estimated future medical costs related to MS and RA in the form of a life care plan. She requested that, as part of the property distribution, the trial court award her $468,531, the present value of her life care plan not covered by insurance. Finally, Nao requested maintenance of $20,000 per month for 12 years.

Following trial and a motion for reconsideration from each party, the court entered a final decree of dissolution and findings of fact and conclusions of law. It awarded Nao $3,288,409.53 of community property (55.5 percent of the community assets) and $484,233 of separate property. It awarded Dan $2,632,915.48 of community property (44.5 percent of the community assets) and $612,293 of separate property. The court declined to give Nao an additional $468,531 for her life care plan, but did award her maintenance. Dan must pay Nao $10,000 per month for seven years

---

[1] We adopt the naming conventions of the parties.

until Nao turns 62 years old; then $1,000 per month until she turns 72 years old; then $100 per month until his death, her death, or her remarriage, whichever occurs first. Dan appeals and Nao cross appeals.

## DISCUSSION

*Maintenance*

Both parties argue that the trial court's maintenance award was an abuse of discretion. We hold that, on the trial court's limited findings of fact, the nominal $100 per month placeholder maintenance award was an abuse of discretion. We affirm the remainder of the maintenance award.

Maintenance is "a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time."[2] "The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just."[3] Those factors include, but are not limited to: (1) the financial resources of the party seeking maintenance; (2) the time needed to acquire education necessary to obtain employment; (3) the standard of living during the marriage; (4) the duration of the marriage; (5) the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; (6) and the ability of the spouse from whom maintenance is sought to meet his or her needs and obligations while providing the other spouse with maintenance.[4]

---

[2] In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).

[3] In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990).

[4] RCW 26.09.090.

Permanent maintenance awards are generally disfavored.[5] But a lifetime maintenance award in a reasonable amount is proper "when it is clear the party seeking maintenance will not be able to contribute significantly to . . . her own livelihood."[6]

We review a trial court's award of maintenance for abuse of discretion.[7] "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons."[8]

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.[9]

Dan does not challenge the maintenance award of $10,000 per month until Nao turns 62 years old, but he argues that the other two tiers of maintenance were simply a "vehicle" to allow the court to retain jurisdiction over the parties. The third tier of maintenance awarded by the trial court was $100 per month from age 72 until Nao's remarriage, her death, or Dan's death. Under these facts, we agree that the award is an impermissible placeholder award.

In its oral ruling, the trial court admitted that there was no basis for the monetary amount of the award:

---

[5] In re Marriage of Coyle, 61 Wn. App. 653, 657, 811 P.2d 244 (1991).

[6] In re Marriage of Mathews, 70 Wn. App. 116, 124, 853 P.2d 462 (1993); see also In re Marriage of Morrow, 53 Wn. App. 579, 770 P.2d 197 (1989) (affirming a lifetime maintenance award where the statutory factors justified maintenance and the wife suffered from a medical condition that occasionally rendered her legally blind and unable to work full time).

[7] In re Marriage of Mueller, 140 Wn. App. 498, 510, 167 P.3d 568 (2007).

[8] In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

[9] Id. at 47.

[M]y problem here is that I . . . sound like I'm being somewhat arbitrary as far as just picking a number here. And I guess there's a reason for that because I guess I should never admit on the record that I'm being arbitrary. That probably wouldn't look good on appeal.[10]

In justifying a lifetime award, the trial court stated that "the reason I'm doing this in the first place is to allow the parties, you know, to come back in to court and revisit the maintenance in its entirety versus simply depending on how much per month I've added."[11] The trial court also explained that the drop to $100 per month would allow Nao to retain the "ability for [an] ongoing maintenance adjustment" and also provide "a time at which . . . people can believe that at least that payment will be reduced."[12] Neither the trial court nor the parties discussed any other reasons for the placeholder award.

The question presented is whether the trial court abused its discretion in making a placeholder award simply to extend jurisdiction over the parties. Two Washington cases have addressed placeholder maintenance awards based upon a party's possible future medical needs: Morgan v. Morgan[13] and In re Marriage of Rouleau.[14] In Morgan, the trial court awarded the wife spousal maintenance of $150 per month until her remarriage or further order of the court, and the husband appealed.[15] He argued that the award was based upon the trial court's worry that the stress of the wife's job and the breakup of the marriage might adversely affect her health and she would no longer be

---

[10] Report of Proceedings (RP) (July 27, 2012) at 22.

[11] Id. at 23.

[12] Id. at 26.

[13] 59 Wn.2d 639, 369 P.2d 516 (1962).

[14] 36 Wn. App. 129, 672 P.2d 756 (1983).

[15] Morgan, 59 Wn.2d at 641.

able to work.[16] The Supreme Court noted that it was "not clear what the basis was for the trial court's award of alimony" and held that the award was error:

> [T]here is neither evidence in the record nor a finding of fact to support an alimony award on such a conjectural basis. . . . There is no evidence of an existing or reasonably anticipated future impairment of respondent's health that now adversely affects her earning capacity. It is, therefore, clear that a finding of necessity, upon which an award of alimony depends, cannot be based upon the conjectural possibility of a future change in circumstances.[17]

In Rouleau, the wife appealed a nominal lifetime maintenance award to the husband.[18] There, the husband suffered an aneurysm near the end of their nearly 20-year marriage, leaving him disabled.[19] The trial court found that the husband could not work because of his disability, but that he received enough money from private disability benefits and Social Security to meet his needs.[20] Even so, the court awarded the husband maintenance of $1 per year because "the door should be left open for the husband to apply for increased maintenance should circumstances change in the future."[21] The trial court further explained that "while [the husband's disability] does not create a financial need at this moment[,] it creates an underlying need which may become a financial need should . . . something occur in the future."[22]

On appeal, the wife argued that the maintenance award was improper because it was based on speculation that the husband's needs would change and because it

---

[16] Id. at 643.

[17] Id.

[18] Rouleau, 36 Wn. App. at 131.

[19] Id. at 130.

[20] Id.

[21] Id.

[22] Id.

allowed the trial court to retain jurisdiction over the parties where ordinarily it could not.[23]

Division Three of this court agreed and reversed.[24] Relying on Morgan, the court noted that maintenance must be based upon necessity and "'cannot be based upon the conjectural possibility of a future change in circumstances.'"[25] The court held that the record did not contain any facts indicating that the husband's financial needs were likely to change and, absent any testimony that the husband would require additional assistance, the court could only "speculate" about his future needs, in violation of Morgan.[26] The court declined to reach the wife's jurisdiction argument, stating:

> [The wife] also argues that the award is improper because it allows the court to retain jurisdiction over the parties where it ordinarily could not. We have determined the record is insufficient to support an award of nominal maintenance. Therefore, *we need not decide whether a reservation of jurisdiction on the question of alimony is ever appropriate; i.e., where the evidence is such that a future change of circumstances is likely.*[27]

Here, Nao presented expert testimony from her treating physician, Dr. James Bowen, about the likely progression of her medical conditions. He testified that during recent years, Nao's MS has been "relatively stable" but that "MS is an unpredictable disease."[28] He explained that patients generally develop a progressive disability over time and the extent of that disability is hard to predict. Dr. Bowen testified that about two-thirds of MS patients will develop more progressive symptoms after living with the

---

[23] Id. at 131.

[24] Id. at 132.

[25] Id. (quoting Morgan, 59 Wn.2d at 643.)

[26] Id.

[27] Id. (emphasis added).

[28] RP (Apr. 19, 2012) at 534.

disease for 10 years. At trial, Nao had been diagnosed with MS for six years.

Dan also presented expert testimony on the typical progression of MS. Dr. William Likosky testified that while MS is "known for some uncertainty," the average person with MS "does pretty well."[29] He estimated that 15 years after diagnosis, about one in three people will have some kind of disability, such as having to use a cane or having weakness on one side of the body.

In its findings of fact and conclusions of law, the trial court did not address this testimony directly, except to acknowledge that Dr. Bowen and Dr. Likosky each testified. While the court found that "[t]he wife may incur future medical expenses and have future rehabilitation costs due to her medical conditions," it did not make any findings as to the likelihood or degree to which Nao's condition might worsen.[30] Importantly, the trial court declined to fund the life care plan because it found that "a factual basis was not presented to prove that the wife is in need of all services detailed in the [l]ife [c]are [p]lan at this time."[31]

Even if we assume that, by finding Nao "may" incur future medical expenses, the trial court accepted that there would be some worsening of her condition, these findings do not provide an adequate foundation for retaining jurisdiction. A dissolution is supposed to finalize the parties' obligations to one another.[32] By reserving jurisdiction to modify maintenance for the duration of Nao's lifetime, or until her remarriage, Dan's

---

[29] RP (Apr. 17, 2012) at 254.

[30] Clerk's Papers at 350.

[31] Id.

[32] Shaffer v. Shaffer, 43 Wn.2d 629, 630-31, 262 P.2d 763 (1953) (holding that the trial court's property distribution was an abuse of discretion because it left the parties' obligations under the decree unsettled).

8

obligations under the decree remain unsettled. While maintenance is a flexible tool, there is no showing that the legislature intended to grant broad authority for open-ended maintenance as urged by Nao. Maintenance cannot be used as an insurance policy against potential hardship in the absence of specific findings regarding the certainty that those hardships are likely to occur.[33] In the absence of a specific finding on the likelihood that Nao's condition will worsen and she will need additional maintenance, the trial court abused its discretion by awarding the $100 per month lifetime placeholder maintenance award, and that portion of the decree must be reversed.

Dan also challenges the $1,000 per month maintenance from age 62 to 72 as a speculative placeholder award. But we conclude the trial court did not abuse its discretion in awarding Nao maintenance from age 62 to 72. During its oral ruling, the trial court stated that "there were other considerations that [it] made in coming up with a thousand dollars, other than simply being a simple vehicle to allow maintenance."[34] It acknowledged that rather than selecting a nominal amount to simply extend jurisdiction, the court picked the $1,000 amount "in recognition of the belief that there should be additional maintenance."[35] Specifically, the trial court explained that the $1,000 a month "was justified, in my mind with, again, a continued concern as far as the medical bills."[36]

---

[33] We do not address whether there could ever be facts supporting the use of a placeholder award to retain jurisdiction under different circumstances, e.g., if a trial court entered specific findings as to the likelihood of future medical expenses or worsening condition.

[34] RP (July 27, 2012) at 9; see also City of Lakewood v. Pierce County, 144 Wn.2d 118, 127, 30 P.3d 446 (2001) ("If findings of fact are incomplete, the appellate court may look to the trial court's oral decision to eliminate speculation concerning the legal theory upon which the trial court based its decision.").

[35] RP (July 27, 2012) at 9.

[36] Id. at 24.

The trial court also noted concern over Nao's "medical needs" and "what insurance will cover" in explaining the basis for the $1,000 a month.[37]

Dan contends the court's vague concern with medical bills from age 62 to 72 was a transparent rationale for a placeholder award, merely intended to keep the door open for a potential modification if Nao's health worsened. While the court's explanation of this award is not as specific as it could have been, Dan does not establish that the trial court abused its discretion.

Even though the trial court did not fund the life care plan, that plan provided some evidence of Nao's current and ongoing medical expenses. There was also evidence that Nao could no longer be covered under Dan's medical insurance and would have to find a policy that would accept her preexisting medical conditions. The court's decision to award maintenance beyond age 62 was appropriate because of its concern regarding Nao's medical bills and insurance limitations. The trial court had a reason, apart from simply extending its own jurisdiction, to award Nao additional maintenance from age 62 to 72. The $1,000 a month maintenance award was not a placeholder award.

Dan argues that the trial court abused its discretion because it did not consider whether Dan will have the ability to pay maintenance after he retires. But the trial court's finding that "the husband has the ability to pay" maintenance has not been challenged.[38]

---

[37] Id. at 26.
[38] Clerk's Papers at 349.

Dan also argues that the maintenance award was an abuse of discretion because it constituted a "double dip" into his award of Naodan.[39] He contends that Naodan's valuation was based on the company's future income streams and Nao was already compensated for her interest in those future income streams when the trial court divided the couple's assets. So, he argues, the award of maintenance based upon Dan's income, which comes from Naodan, compensates Nao twice for the same asset.

Dan relies on In re Marriage of Barnett, which gave rise to the "double dip" line of cases.[40] There, the couple was married 44 years.[41] Their major asset was their salvage business, valued at $200,000.[42] The trial court awarded the business to the husband but gave a $100,000 lien against the business to the wife.[43] The court also awarded the wife $500 per month in lifetime maintenance.[44] Division Three of this court held that the maintenance award was essentially a distribution of assets because the husband was selling off existing scrap and not acquiring more.[45] The husband's proceeds from the business were not from its operation but from its liquidation.[46] Because the distribution of the business had already been effected by the lien to the

---

[39] Br. of Appellant/Cross Respondent at 16.

[40] 63 Wn. App. 385, 818 P.2d 1382 (1991).

[41] Id. at 386.

[42] Id.

[43] Id.

[44] Id.

[45] Id. at 388.

[46] Id.

wife, the trial court impermissibly distributed the same property twice through the lien and the maintenance award.[47]

Here, there was no double award because Naodan's valuation was not simply based on the company's future income streams, as Dan suggests. James Weber, the financial expert upon whom the trial court relied, testified that if Dan were to sell the business and the new owner had to hire someone with Dan's knowledge and experience, the reasonable replacement compensation would be $400,000 a year. In calculating the business's average income stream for the valuation, that $400,000 expense, along with the other salary expenses and operating expenses, was deducted to arrive at a "net" return for the new owner or investor. Therefore, because this reasonable replacement compensation was carved out of the income streams used for the valuation, Nao was not compensated for Dan's replacement salary in the asset distribution, and the maintenance payments do not duplicate the property distribution.

Nao argues that if the record supports the award of $1,000 for 10 years, then logically it must also support the lesser $100 award. But the $100 per month lifetime award was made solely as a placeholder award. Because the trial court had a nonplaceholder rationale for the $1,000 per month award from age 62 to 72 and only made the $100 per month placeholder award after age 72 to extend jurisdiction over the parties, this argument is not persuasive.

Nao also argues that the third tier of maintenance should stand because Dan argued for a nominal amount and, therefore, invited the error. But nowhere in the

---

[47] Id.

record did Dan suggest a nominal amount of lifetime maintenance was appropriate. Therefore, this argument is not persuasive.

*Cross Appeal—Property Division*

Nao argues that the trial court abused its discretion in declining to award her an additional $468,531 for her life care plan. We disagree.

In a marriage dissolution proceeding, the trial court must dispose of the property and the liabilities of the parties, either community or separate, in a just and equitable manner considering all relevant factors.[48] Such factors include, but are not limited to "(1) [t]he nature and extent of the community property; (2) [t]he nature and extent of the separate property; (3) [t]he duration of the marriage or domestic partnership; and (4) [t]he economic circumstances of each spouse or domestic partner at the time the division of property is to become effective."[49] We review a trial court's division of property for abuse of discretion.[50]

Here, the trial court awarded Nao community property worth $3,288,409.53 (55.5 percent of the community assets) and separate property worth $484,233. It awarded Dan community property worth $2,632,915.48 (44.5 percent of the community assets) and separate property worth $612,293. The court declined to give Nao an additional $468,531 for her life care plan.

In the findings of fact and conclusions of law, the court supported its decision by finding that "a factual basis was not presented to prove that the wife is in need of all

---

[48] In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005) (citing RCW 26.09.080).

[49] RCW 26.09.080.

[50] Muhammad, 153 Wn.2d at 803.

services detailed in the [l]ife [c]are [p]lan at this time."[51] A trial court's findings of fact are reviewed for substantial evidence.[52] Nao assigned error to this finding, but offers no compelling argument that it was unsupported by substantial evidence.[53] The trial court was not required to accept her forecast of lifetime medical needs and treatment costs. Nao does not meet her burden to show that the trial court erred in making the finding or abused its discretion in failing to award her the value of the life care plan.

Nao argues that courts routinely assess uncertainties during litigation and that the trial court applied an incorrect legal standard in considering whether to fund the life care plan, but she cites no authority that the court was compelled to accept her projection of possible future medical and treatment costs.[54]

*Cross Appeal—Maintenance*

In her cross appeal, Nao argues that the entire award of maintenance is inadequate given her extraordinary needs. She argues that she should have been awarded the maintenance she requested of $20,000 per month until she turns 66 years old.

Nao does not argue that the trial court failed to consider all relevant factors, weighed the factors improperly, or made findings unsupported by substantial evidence. She only argues that this case closely resembles other cases where a court awarded

---

[51] Clerk's Papers at 350.

[52] Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

[53] Humphrey Indus., Ltd v. Clay Street Assocs., 176 Wn.2d 662, 675, 295 P.3d 231 (2013).

[54] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (the court need not consider an issue absent citation to legal authority).

substantial or permanent maintenance. This argument essentially asks us to evaluate each of the relevant factors de novo and determine that $20,000 per month until age 66 is more appropriate than the maintenance awarded. Absent an abuse of discretion, we cannot substitute our judgment for that of the trial court. Accordingly, we reverse the $100 per month placeholder maintenance award after age 72, but affirm the remaining maintenance awarded to Nao.

### Attorney Fees

Nao seeks attorney fees under RAP 18.1 and RCW 26.09.140. We may award attorney fees after considering the relative resources of the parties and the merits of the appeal.[55] Because Nao was awarded substantial property and maintenance, we decline to award her attorney fees on appeal.

### CONCLUSION

We reverse the $100 per month lifetime placeholder maintenance award, but affirm the remainder of the maintenance award as well as the trial court's property division.

WE CONCUR:

_____

_____ , A.C.J.

_____

---

[55] RCW 26.09.140; In re Marriage of Leslie, 90 Wn. App. 796, 807, 954 P.2d 330 (1998).