**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

2017 MAY -8 AM 8:39

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 74405-4-I |
| | ) | |
| HILLERY LORE NYE LEE, | ) | |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| and | ) | |
| | ) | ORDER WITHDRAWING OPINION |
| RALPH BRYAN LEE, | ) | AND SUBSTITUTING OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |

The panel has determined that the opinion in the above-entitled case filed on May 1, 2017, shall be withdrawn and a substitute unpublished opinion be filed.

Therefore it is

ORDERED that the opinion filed on May 1, 2017, is withdrawn and a substitute unpublished opinion shall be filed.

DATED this ⁸ᵗʰ day of May 2017.

_____

_____          _____

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 74405-4-I |
| | ) | |
| HILLERY LORE NYE LEE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| and | ) | |
| | ) | |
| RALPH BRYAN LEE, | ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent. | ) | |
| | ) | FILED: May 8, 2017 |

MANN, J. — In a marriage dissolution proceeding, the trial court must dispose of the property and the liabilities of the parties, either community or separate, in a just and equitable manner. RCW 26.09.080. Hillery Nye (Nye) appeals the trial court's division of property held by Nye and her former husband, Ralph Lee (Lee). We agree with Nye that the trial court mischaracterized several significant property assets and that the mischaracterization significantly influenced the property division. We uphold the trial court's dissolution decree, but we vacate the court's property division. We remand for a new evidentiary hearing and the just and equitable division of property.

I

In August 2006, Nye and Lee moved in together. They married in July 2007. Both Nye and Lee had children from previous marriages, but they did not have children together.

Lee purchased a house in Seattle's Madrona neighborhood just before he and Nye moved in together (Madrona house). Lee purchased the Madrona house for $1.87 million, putting down 20 percent and financing the rest on an adjustable rate mortgage. Nye already owned a home on Vashon Island (Vashon house). The Vashon house was Nye's childhood home. Before marrying, Nye and Lee each took out Home Equity Lines of Credit (HELOC) on the two houses. The Vashon house had a credit line of $100,000 and the Madrona house had a credit line of $191,500. The parties did not borrow funds from the HELOCs until after marriage.

At the time Lee and Nye moved in together, Lee was employed as a Chief Financial Officer at Microsoft and Nye had her own law practice, MediaTech, with another lawyer. Lee's salary at Microsoft was $350,000 to $400,000 plus stock grants of $1.5 to 1.6 million per year. Nye earned approximately $150,000 per year.

In April 2007, Lee left his job at Microsoft. According to Lee, he left with a net worth of $3 million in real estate and "unrealized" investments. Lee and Nye married in July 2007. Lee remained unemployed and did not work during the marriage except for seven to eight months in 2011, and sporadically as a consultant.

In November 2007, Nye and Lee purchased a vacant lot (Vashon lot) adjacent to the Vashon house for $55,000. They purchased the Vashon lot from Nye's mother. Nye's mother purchased the adjacent Vashon lot when the previous owner died. Nye

and Lee took title as joint tenants with a right of survivorship. Nye paid all of the taxes and utilities on the Vashon lot throughout the marriage. After purchasing the Vashon lot, Nye negotiated a lease with AT&T. Payments from the AT&T lease were made to Nye's separate bank account and reported to the Internal Revenue Service (IRS) as Nye's income.

In September 2008, Nye and Lee's financial condition worsened. Nye's law practice, MediaTech, shut down in the wake of Nye bringing suit against her law partner to dissolve the partnership. Nye incurred nearly $500,000 in legal bills. The effort resulted in a $40,000 award in her favor, which she never recovered. Meanwhile, Lee remained unemployed and his investments lost significant value. He testified that by the end of 2008, they went from "$3 million in unrealized gain" to a "realized gain of approximately $200,000." In 2009, the couple was unable to pay their 2008 taxes and asked the IRS for a payment plan.

In 2009, Nye started another law firm, Madrona Law Group. Lee transferred funds from his personal account to help the startup. Nye also borrowed from the Vashon HELOC to start up the firm. MediaTech and Madrona Law Group lost money in 2009. Lee and Nye did not file a 2009 tax return because of negative income. Meanwhile, Lee, though unemployed, continued to pay a substantial amount of family support to his ex-wife.

In 2010, Nye's new law firm, Madrona Law Group, generated a positive cash flow, from which the mortgagees and other community expenses were paid. That same year, Lee revealed to Nye that they were "broke." Lee and Nye borrowed additional funds from friends and family. They also maxed out the Madrona and Vashon HELOCs.

By this point, the couple could not afford to pay their tax bill. They had an outstanding unpaid tax bill of $39,000 for 2008. Nye borrowed $25,000 from her Bank of America credit card to cover part of this debt.

In 2011, Nye's law practice again generated income. However, she was unable to pay $22,000 in taxes for 2011 and incurred penalties resulting in a $30,000 tax bill owing for 2011. The IRS put her on a payment plan.

Meanwhile, Lee took a job with Votocracy, a technology start-up from whom Nye was consulting as outside intellectual property counsel. Lee left within a year after earning approximately $100,000. Lee also set up a consulting firm, Bryan Lee Consulting, which earned approximately $50,000 in 2011. In 2011, Lee also incurred approximately $9,000 in legal fees related to litigation with his ex-wife. In July 2011, Lee stopped making mortgage payments on the Madrona house.

In 2012, Nye was the victim of a carjacking and was unable to work for about nine months, having suffered from a posttraumatic stress disorder. In the aftermath, the couple moved to the Vashon house. Nye's income for the year was a net loss of $3,000. Lee earned nothing. The couple did not file a 2012 tax return.

In August 2013, Lee and Nye separated and Nye petitioned for dissolution. During the separation, Lee moved back to the Madrona house. At this point, Lee had not paid the mortgage since 2011. In 2013 and 2014, Lee claims to have earned $25,000 and $50,000 respectively, for his consulting business, from which he paid his ex-wife half. Nye remained at the Vashon house and continued to pay taxes and utilities on the adjacent Vashon lot and receive rent from the AT&T lease. By 2014, Nye was not able to make mortgage payments on the Vashon house and the house fell into

foreclosure. The IRS placed a lien on the Vashon house based on failing to make payments under the 2011 payment plan.

The parties went to trial in February 2014. The trial court issued a preliminary spreadsheet dividing Lee and Nye's assets and liabilities. The proposed order showed a judgment of $72,857 owed by Nye to Lee.

After trial, but just before the court issued its order, Nye filed bankruptcy under Chapter 13, staying the dissolution proceedings. The court expressed frustration at Nye's bankruptcy filing, agreeing with Lee that "nothing surprises me about this." The trial court noted that "I was reluctant to issue the spreadsheets 'cause I was afraid of this, and this is exactly what she did." The trial court added that "this was a classic move," and told Lee "I am so sorry for you." While the dissolution proceedings were stayed, Lee submitted a claim in Nye's pending bankruptcy proceedings, disqualifying her from Chapter 13 eligibility. Nye voluntarily dismissed her bankruptcy proceeding.

After Nye's bankruptcy was dismissed, Lee filed a motion with the dissolution court to proceed with the dissolution and to admit documents from Nye's bankruptcy proceedings. Nye opposed Lee's motion and asked the court to hold an evidentiary hearing and issue a partial decree addressing the noneconomic issues. The court denied Nye's motion and issued a decree of dissolution and findings of fact and conclusion law.

The trial court's findings included a list of the division of assets and liabilities to each party and a spreadsheet. Of significance, the trial court made the following characterizations and awards: (1) the Madrona house and furnishings was characterized and awarded to Lee as his separate property, (2) the Vashon house and

furnishings was characterized and awarded to Nye as her separate property, (3) the Vashon lot and AT&T lease proceeds were characterized and awarded to Lee as his separate property, (4) the debt on the Madrona house HELOC was characterized as community property, (5) the debt on the Vashon house HELOC was characterized as Nye's separate property, (6) Nye's wedding ring was characterized as community property, (7) the assets and receivables from the Madrona Law Group was characterized as community property, and (8) the assets and receivables from Bryan Lee Consulting was characterized as Lee's separate property. The end result was Lee received $126,171 net in separate property, plus a payment from Nye of $246,918 for a total of $373,089. Nye received a negative $47,006 in separate property plus the debt of $246,918 to Lee for total negative $293,924.

Nye filed a motion for reconsideration of the court's order, challenging the division, characterization, and valuation. The trial court denied Nye's motion for reconsideration.

II

Generally, we review a trial court's division of property in a marital dissolution for an abuse of discretion. In re Marriage of Valente, 179 Wn. App. 817, 831, 320 P.3d 115 (2014). The trial court's characterization of property as separate or community is a question of law that we review de novo. The factual findings supporting the court's characterization require substantial evidence. In re Marriage of Mueller, 140 Wn. App. 498, 503-04, 167 P.3d 568 (2007). "Substantial evidence exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of

the declared premise." In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002).

In a marriage dissolution proceeding, the trial court's division of property is guided by statute. The relevant factors the court must consider include, but are not limited to: "(1) [t]he nature and extent of the community property; (2) [t]he nature and extent of the separate property; (3) [t]he duration of the marriage or domestic partnership; and (4) [t]he economic circumstances of each spouse or domestic partner at the time the division of property is to become effective." Valente, 179 Wn. App. at 831 (quoting RCW 26.09.080). In weighing the statutory factors, the trial court must make a "just and equitable" division of the property. RCW 26.09.080; In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007); Valente, 179 Wn. App. at 830-31.

III

As a threshold matter, Nye argues that the trial court's findings of fact and conclusions of law are inadequate. We agree.

The standard of review discussed above contemplates that we have adequate findings of fact to review. A trial court must make findings of fact and conclusion of law sufficient to suggest the factual basis for its ultimate conclusions. In re Marriage of Lawrence, 105 Wn. App. 683, 686, 20 P.3d 972 (2001). Here, while the trial court entered findings of fact, including tables and a spreadsheet setting forth the property division, the findings fail to demonstrate the trial court's consideration of the required statutory elements, including, importantly, the statutory requirement that the division be "just and equitable." RCW 29.09.080. While inadequate written findings may be

supplemented by the trial court's oral decision, here there was no oral decision. Lawrence, 105 Wn. App. at 686; Rockwell, 141 Wn. App. at 240, n.2.

On remand, the trial court should explain in its written findings or oral decision, that it considered the statutory elements including that the division be "just and equitable."[1]

IV

Nye argues first that the trial court mischaracterized certain assets and liabilities. The effect of this, she maintains, drove a division scheme that "substantially prejudiced" her. Nye specifically argues that the court mischaracterized: (1) the contents of the Madrona house as Lee's separate property and the Madrona house's HELOC as Lee's community property, (2) the debt on the Vashon house's HELOC as Nye's separate property, (3) the Vashon lot and lease as Lee's separate property, (4) the Vashon lot's postseparation rents as community property, and (5) Nye's engagement ring as community property. We agree in part.

We first determine whether the property was mischaracterized. All property acquired during a marriage is presumed to be community property. RCW 26.16.030; Mueller, 140 Wn. App. at 504. The character of property as community or separate is to be determined as of the date of its acquisition. In re Marriage of Shannon, 55 Wn. App. 137, 140, 777 P.2d 8 (1989). The law favors characterization of property as community property unless there is no question of its separate character. Mueller, 140 Wn. App. at

---

[1] For example, the trial court awarded all assets and receivables of "Bryan Lee Consulting" to Lee as his separate property, but did not include that asset in its calculation spreadsheet. In contrast, the trial court split all assets and receivables of Nye's law practice, the Madrona Law Group, equally between Nye and Lee. The court did not explain why the two ongoing concerns were treated differently or why this was a just and equitable result.

504. Once a presumption in favor of either community or separate property is established, the burden to overcome the presumption is by clear and convincing evidence. In re Estate of Borghi, 167 Wn.2d 480, 484, 219 P.3d 932 (2009). For real property, an acknowledged writing is generally required to rebut the presumption. Borghi, 167 Wn.2d at 484. The test for determining whether a debt obligation is separate or community in nature is the purpose for which the note was executed. In re Marriage of Hurd, 69 Wn. App. 38, 54, 848 P.2d 185 (1993). If the money is borrowed for a community purpose, then the debt is community. If it is borrowed for a separate purpose, then the debt is separate. Hurd, 69 Wn. App. at 54.

A.    Madrona House and Debt

As of trial, the Madrona house was valued at $1,200,000 however carried a mortgage debt of $1,962,282. The trial court characterized the Madrona house as community property and assigned a value of $0 to Lee. Lee purchased the Madrona house before his marriage to Nye. Lee bought the house with his separate funds for the couple to move into together, and the couple moved in with their children (from previous marriages) shortly thereafter. Nye asked Lee to be on the title because "she felt uncomfortable from a relationship standpoint that [Lee] had all the money and the power and that it was [Lee's] house and [he] could kick [Nye] out on any day." The court stated at trial that this was the main family home, which was not disputed.

The trial court erred in characterizing the Madrona house as community property. Because the Madrona house was purchased before the marriage, the house and its mortgage debt should be characterized as Lee's separate property.

The Madrona house HELOC carried a debt of $200,894. The trial court characterized the Madrona house HELOC as community property and assigned the debt to Lee. The Madrona house HELOC was established prior to the marriage but funds were not drawn against it until after the marriage. The Madrona HELOC was used to pay various expenses during the marriage. For example, Nye testified that she found out that Lee was "out of money" in late 2009 or early 2010, and that at that time the HELOC was "completely depleted."

The trial court properly characterized the Madrona house HELOC as community property because it was used for expenses during the marriage.

The trial court characterized all contents within the Madrona house (except Nye's personal possessions) as Lee's separate property and assigned a net value of $15,000 to Lee. Lee purchased the Madrona house's contents with his separate money prior to the marriage for $100,000. At separation, the furnishings were valued at $15,000.

The trial court properly characterized these as Lee's separate property.

B.    Vashon House HELOC

The trial court characterized the debt on the Vashon house HELOC as Nye's separate property and assigned the $100,000 debt to Nye. Nye claims that this was an error because the debt was created after the marriage and was used to pay expenses associated with the marriage. We agree.

While Nye established the Vashon HELOC two months prior to her marriage to Lee, she did not draw funds against the HELOC until after marriage. Although Nye testified that she paid legal fees incurred in a lawsuit with her ex-husband from the HELOC, Nye also testified that she depleted the HELOC after she discovered Lee was

broke and that the "goal [with the HELOC] was to . . . bridge the gap until [Lee] got a job and we could get back on our feet." In addition, Nye took out the HELOC in May 2007, two months before she married Lee and while she was living with him. The law favors characterizing property as community property unless there is no question of its separate character. Mueller, 140 Wn. App. at 504.

The trial court erred in characterizing the Vashon house HELOC as Nye's separate property. The debt on the Vashon property HELOC is community property.

## C. Vashon Lot and Lease

Nye argues next that the court mischaracterized the Vashon lot and AT&T lease proceeds as Lee's separate property. We agree.

The Vashon lot and lease were purchased and executed during the marriage. Nye and Lee took title as "husband and wife, joint tenants with right of survivorship." Similarly, Lee and Nye also executed the lease with AT&T in 2010, while they were still married. Unless Lee can show that there was no question about the property's separate character, the law presumes that this asset is community property. See Mueller, 140 Wn. App. at 504. Although Lee provided a copy of a withdrawal slip from his separate bank account, this does not rebut the presumption in favor of community property; he provided no acknowledged writing showing that the property was intended to be characterized as separate property. See Borghi, 167 Wn.2d at 484.

The trial court erred in characterizing the Vashon lot and AT&T lease proceeds as Lee's separate property.

D.     Engagement Ring

The trial court characterized the engagement ring as community property.  Nye argues that the court mischaracterized the engagement ring because Lee gave it to her before marriage.  We agree.

There is no dispute that Lee gave Nye the engagement ring as a premarriage gift.  At trial, while questioning Nye, Lee confirmed that he was "not asserting [the engagement ring was] anything other than a gift.  During closing argument Nye again admitted "I'm not claiming that I owned the ring."  Because Lee gave the engagement ring to Nye before marriage it was a gift and therefore Nye's separate property.  See Johnson v. Dar Denne, 161 Wash. 496, 497, 296 P. 1105 (1931) (jewelry given as a gift is separate property even if acquired after marriage using community funds).

The trial court erred in characterizing the engagement ring as community property.

V

Remand is required where (1) the trial court's reasoning indicates that its division was significantly influenced by its characterization of the property and (2) it is not clear that had the court properly characterized the property, it would have divided it in the same way.  Shannon, 55 Wn. App. at 142.  In these circumstances, remand allows the trial court "to exercise its discretion in making a fair, just and equitable division on tenable grounds, that is, with the correct character of the property in mind."  Shannon, 55 Wn. App. at 142.

Here, while the trial court appeared to try and divide the community property evenly, the mischaracterizations discuss above increased the amount that Nye was

-12-

required to pay Lee. It is also unclear that had the trial court properly characterized the assets and liabilities it would have divided them in the same way.[2] Thus, under Shannon, remand is required for the trial court to correctly characterize the property and determine the fair value of all community property. After doing so, the trial court should apply the relevant statutory factors in RCW 26.09.080 and make a "just and equitable" division of the property. RCW 26.09.080; Rockwell, 141 Wn. App. at 242; Valente, 179 Wn. App. at 830-31.

We vacate the trial court's division and remand for a new trial.

_____Mann, J._____

WE CONCUR:

_____Spearman, J._____       _____Bellevelle, J._____

---

[2] For example, because the trial court mischaracterized the Vashon lot and lease as Lee's separate property, it awarded the Vashon lot and its lease to Lee. This is an odd result considering that the parties bought the lot during marriage and Nye's childhood home—the home she currently lives in—is next door.