**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

<table>
<tr><td>In the Matter of the Marriage of</td><td>)<br>)</td><td>No. 77634-7-I</td></tr>
<tr><td>KATHRYN M. COX,</td><td>)<br>)</td><td></td></tr>
<tr><td>Appellant,</td><td>)<br>)</td><td>DIVISION ONE</td></tr>
<tr><td></td><td>)</td><td>UNPUBLISHED OPINION</td></tr>
<tr><td>and</td><td>)<br>)</td><td></td></tr>
<tr><td>JOHN JOSEPH COX,</td><td>)<br>)</td><td></td></tr>
<tr><td>Respondent.</td><td>)</td><td>FILED: June 10, 2019</td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

LEACH, J. — In this marriage dissolution proceeding, Kathryn Cox challenges the trial court's refusal to enforce a postnuptial agreement, its distribution of property and debts, and its maintenance award. She also claims that the court should have imposed a restraining order against John Cox.[1]

Substantial evidence supports the trial court's findings underpinning its conclusion about the postnuptial agreement. And the trial court did not abuse its discretion by awarding each party 50 percent of the marital estate and awarding Kathryn 10 years of maintenance consisting of 50 percent of John's gross annual

---

[1] For purposes of clarity, this opinion refers to Kathryn Cox as Kathryn and John Cox as John.

salary and bonus. Last, the trial court acted within its discretion to decline consideration of Kathryn's request at trial for a restraining order. We affirm.

FACTS

John and Kathryn married in 1986 and have four adult children. John is a commercial real estate professional. Since 2009, John has worked as a senior vice president of Alexandria Real Estate Equities (AREE), a publicly traded real estate investment trust. Kathryn has not worked outside of the home since their first child's birth. John experienced alcoholism and mental health issues throughout the marriage. Both parties testified about John's emotional, financial, and physical abuse of Kathryn.

In December 2006, John moved out of the family home. The next year he filed for dissolution. The parties agreed to dismiss that lawsuit the following year and participated in counseling. But John did not return to the family home. He moved around with no fixed address. He often stayed with friends. He also tried to address his alcohol and mental health issues.

In January 2011, John stopped seeing his mental health care provider and stopped taking his medications. In February 2011, Kathryn presented John with a postnuptial agreement (Agreement). John signed the Agreement in March 2011 without modifications and without consulting an attorney.

In May 2016, Kathryn filed for legal separation. John filed a counterpetition for dissolution. Kathryn filed for summary judgment, asking the trial court to enforce the Agreement. The trial court denied this request. After a five-day trial, the trial court found the Agreement unenforceable because it was substantively and procedurally unfair. The trial court divided the parties' property and debts, awarded Kathryn spousal maintenance, and denied her request for a restraining order. Kathryn asked the court to reconsider its decision. The trial court declined this request but granted her request to clarify certain decree provisions and entered a second amended dissolution decree in October 2017. Kathryn appeals.

## ANALYSIS

### Postnuptial Agreement

Kathryn challenges the trial court's refusal to enforce a postnuptial agreement between her and John. A court conducts a two-step analysis to determine the enforceability of a postnuptial agreement.[2] The court first decides if the agreement is substantively fair to the spouse not asking to enforce it.[3] If it is, the court will enforce it.[4] If the agreement is substantively unfair to the spouse not asking to enforce it, the court determines if the agreement is procedurally fair

---

[2] In re Marriage of Bernard, 165 Wn.2d 895, 902, 204 P.3d 907 (2009).
[3] Bernard, 165 Wn.2d at 902.
[4] Bernard, 165 Wn.2d at 902.

and, if it is, the agreement is valid and binding.[5] The party seeking enforcement of the agreement has the burden of proof.[6] A court determines fairness based on the circumstances at the time the parties signed the agreement.[7]

To be substantively fair, the agreement must make reasonable provision for the spouse not asking for enforcement.[8] Factors the court may consider to decide this question include provisions disproportionate to the means of each spouse, limits on the creation of community or separate property, preclusion of the distribution of one spouse's separate property to the other, prohibitions or limits on maintenance, and limits on inheritance.[9] Substantive fairness is a question of law an appellate court reviews de novo unless the trial court resolved factual disputes to interpret the meaning of the contract.[10] An appellate court accepts the trial court's resolution of factual disputes unless they are not supported by substantial evidence.[11]

The court determines whether the agreement is procedurally fair by asking "(1) whether the spouses made a full disclosure of the amount, character, and value of the property involved and (2) whether the agreement was freely entered

---

[5] Bernard, 165 Wn.2d at 902-03.
[6] Bernard, 165 Wn.2d at 902.
[7] Bernard, 1654 Wn.2d at 904.
[8] Bernard, 165 Wn.2d at 902.
[9] Bernard, 165 Wn.2d at 904.
[10] Bernard, 165 Wn.2d at 902; Mountain Park Homeowners Ass'n v. Tydings, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).
[11] Bernard, 165 Wn.2d at 903.

into on independent advice from counsel with full knowledge by both spouses of their rights."[12] This procedural fairness analysis involves mixed issues of policy and fact; appellate review is de novo but done in light of the trial court's resolution of the facts.[13] An appellate court reviews challenged findings of fact for substantial evidence.[14] "'Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise.'"[15]

Here, the trial court decided that the Agreement was substantively and procedurally unfair. It made extensive factual findings in support of this conclusion. The court made the following findings in support of its conclusion that the Agreement was substantively unfair to John:

1) Regardless of whether Petitioner was aware of the legal and financial consequences that the Agreement would have imposed upon Respondent had the Agreement been implemented as written in March 2011 (The court declines to make findings as to the extent of Petitioner's subjective understanding or her specific intent with respect to the Agreement's terms.), the court finds that the terms of the Property Settlement Agreement are substantively unreasonable because they are severely overreaching and grossly disproportionate in favor of Petitioner; and that had the Agreement been implemented in March 2011, the effects of the Agreement would have been devastating legally and financially for Respondent.

---

[12] Bernard, 165 Wn.2d at 902-03.
[13] Bernard, 165 Wn.2d at 903.
[14] Bernard, 165 Wn.2d at 903.
[15] Bernard, 165 Wn.2d at 903 (quoting In re Marriage of Hall, 103 Wn.2d 236, 246, 692 P.2d 175 (1984)).

2)      At the time of its execution, the Agreement did not include a fair and reasonable provision to Respondent, as shown by the financial analysis of Respondent's expert witness Gregory Porter, CPA, MBA, MS, regarding the financial impact of the Agreement on the parties as of March 2011. *Ex. 147, 163.*

3)      Had the Agreement been implemented as of March 2011, Respondent would have received assets/liabilities resulting in a net worth of negative $843,588 and an annual cash flow of negative $6,364, while Petitioner would have received assets/liabilities resulting in a net worth of $396,870 and an annual cash flow of $177,878. *Ex. 147, 163.*

4)      The Agreement required Respondent to pay Petitioner 60% of Respondent's restricted stock awards received and to be received from his employer, Alexandria Real Estate Equities, Inc. ("AREE"); and the Agreement also required Respondent to pay Petitioner 60% of the income he would receive from exercising the remainder of stock awards (40%) awarded to him, resulting in Petitioner receiving a total of 84% of the proceeds of Respondent's employee stock awards (i.e., 60% + (60% x 40%) = 84%).

5)      Applying the *Bernard* factors [In re Marriage of Bernard, 165 Wn.2d 895, 204 P.3d 907 (2009)], the court finds that **i)** the Agreement disproportionately benefited Petitioner and did not make fair provision for Respondent (Greg Porter testimony, *Ex. 147, 163)*; **ii)** the Agreement did not restrict the accumulation of community property; **iii)** the Agreement eliminated the court's discretion to distribute separate property by requiring the court to award to Petitioner the majority of Respondent's restricted (unvested) AREE stock awards, which are properly characterized as Respondent's separate property per the unchallenged testimony of Respondent's expert Kevin Grambush, CPA, ABV *(Ex. 133);* **iv)** the spouses were married when the Agreement was executed and both were reliant on Respondent's earnings from employment for their financial support; **v)** the Agreement took away Respondent's statutory and common law community and separate property rights to receive a fair and equitable division of the property and liabilities and

-6-

eliminated his statutory right to have his obligation for spousal maintenance determined based on the statutory factors; **vi)** the Agreement limited Respondent's right to inherit from Petitioner but did not limit Petitioner's right to inherit from Respondent; **vii)** the Agreement did not prohibit the court from awarding spousal maintenance to Petitioner; and **viii)** the Agreement limited Respondent's right to accumulate separate property but did not limit Petitioner's corresponding right.

Kathryn directly challenges only finding 5.[16] Usually an appellate court accepts unchallenged findings of fact as true on appeal.[17] But in her briefing, Kathryn claims the trial court (1) mistakenly relied on John's analysis that the Agreement gave her 84 percent of the proceeds of John's stock awards, (2) "failed to make findings" that her maintenance was based on John's prior year's income, so the parties' monthly and annual cash flow would have been closer to equal, and (3) improperly "declined to find" that the compensatory future stock awards, when liquidated, were income. Her first two claims indirectly challenge findings 4 and 3, respectively. Her briefing does not disclose, either directly or indirectly, what finding, if any, her third claim challenges.

While Kathryn does not properly challenge findings 4 and 3, we consider her claims and conclude that substantial evidence supports them. Kathryn claims insufficient evidence supports finding of fact 4 because a "fundamental

---

[16] Kathryn challenges finding of fact 5 in her assignments of error only. Because she does not provide argument in support of her challenge, we decline to review it. RAP 10.3(6).

[17] Robel v. Roundup Corp., 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

difference" exists in calculating the parties' net worth for purposes of property division and their monthly cash flow and annual income for purposes of spousal maintenance. She thus claims that the trial court erred in finding that she would receive 84 percent of the proceeds of John's stock awards. But the Agreement awarded her 60 percent of each stock award in its division of property and monthly maintenance equal to 60 percent of his gross income from all sources. Gregory Porter, a certified public account who reviewed the Agreement, testified that this gross income includes John's retained 40 percent of vested stock awards. So Kathryn would receive 60 percent of each stock award as property and an additional 24 percent ($40\% \times .6 = 24\%$) as maintenance, for a total of 84 percent of each stock award. Porter also provided additional testimony consistent with the trial court's finding. Substantial evidence supports finding 4.

Kathryn also challenges finding 3 about the net value of property received by each party under the Agreement. She claims that the trial court did not recognize that her maintenance was based on John's previous year's income, so John would not have a negative net worth and she a positive net worth after John paid community debt. But Kathryn provides no citation to the record to show that the trial court made an error. And Porter's testimony supports the trial court's findings that the Agreement left John with a negative net worth and Kathryn with a positive net worth. Substantial evidence supports finding 3.

Next, Kathryn challenges the trial court's decision that the Agreement was procedurally unfair on two grounds. We reject these claims.

First, she contends that the trial court failed to consider her claims of domestic abuse against John as part of the totality of the circumstances; the court failed to determine "whether an unrefuted history of domestic violence should somehow lower the procedural fairness requirements upon an abuser." But Kathryn does not assign error to any of the court's 28 findings supporting its conclusion that the Agreement was procedurally unfair. So we accept these findings as true for this appeal.[18] One of the court's findings states, "Given [John's] mental health condition and vulnerable state, of which [Kathryn] was aware, and [her] exercise of control over [John's] access to the family home and the children, the circumstances under which the Agreement was executed are fairly characterized as coercive and involving objectionable influence." These circumstances and the trial court's other numerous findings support its conclusion that the Agreement was procedurally unfair.

Second, Kathryn claims that John's behavior shows that he understood the Agreement and agreed to its terms. She contends that days before signing the Agreement, John sent her an e-mail with financial modeling of their finances from 2011 forward and, in 2012, he sent her another e-mail referencing the

---

[18] Robel, 148 Wn.2d at 42.

Agreement and the fact that it took care of her. But, as we have stated, Kathryn does not assign error to any of the 28 findings of fact supporting the trial court's conclusion that the Agreement was procedurally unfair.

Kathryn's claim that the trial court should have enforced the Agreement fails because it was both substantively and procedurally unfair.

### Division of Property and Spousal Maintenance Award

Kathryn claims that the trial court made an unfair division of the marital estate and an unfair maintenance award. We disagree.

An appellate court reviews the trial court's division of property and debts in a dissolution proceeding and a spousal maintenance award for a manifest abuse of discretion.[19] A manifest abuse of discretion occurs when the trial court exercised its discretion based on untenable grounds or reasons or if the dissolution decree "results in a patent disparity in the parties' economic circumstances."[20] A reviewing court should affirm the trial court's decision "unless no reasonable judge would have reached the same conclusion."[21] "[T]rial court decisions in a dissolution action will seldom be changed upon appeal."[22]

---

[19] In re Marriage of Valente, 179 Wn. App. 817, 822, 831, 320 P.3d 115 (2014).
[20] In re Marriage of Rockwell, 141 Wn. App. 235, 243, 170 P.3d 572 (2007).
[21] In re Marriage of Landry, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985).
[22] Landry, 103 Wn.2d at 809.

## A. Distribution of Property

Kathryn asserts that the trial court's distribution of the marital estate placed her in a financial position "grossly inferior" to John's. Again, we disagree.

RCW 26.09.080 requires that a trial court consider the following factors when distributing property in a dissolution action: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of the property is to become effective. In weighing these factors, the court must make a "just and equitable" distribution of the marital property.[23] But a trial court need not divide community property equally.[24] "In a long term marriage of 25 years or more, the trial court's objective is to place the parties in roughly equal financial positions. . . . The longer the marriage, the more likely a court will make a disproportionate distribution of the community property."[25] "Future earning potential 'is a substantial factor to be considered by the trial court in making a just and equitable property distribution.'"[26] A court may award one spouse's separate property to the other spouse.[27]

---

[23] RCW 26.09.080.
[24] Rockwell, 141 Wn. App. at 243.
[25] Rockwell, 141 Wn. App. at 243.
[26] Rockwell, 141 Wn. App. at 248 (quoting Hall, 103 Wn.2d at 248).
[27] In re Marriage of Larson, 178 Wn. App. 133, 135, 313 P.3d 1228 (2013).

Kathryn asserts that the court's distribution of property is unfair for a number of reasons. First, she claims that the court should not have characterized all of the AREE stock from John's employer as separate property. But she acknowledges the court divided the restricted, unvested AREE stock awards in John's possession at the time of separation "as set forth in Exhibit A, in order to yield an overall division of 50% of the marital estate to each party." This division does not show an unfair or "grossly inferior" award.

Second, in her briefing, she claimed that the court should not have awarded John all of the AREE stock awards granted and vested after the date of the separation. She withdrew this claim in oral argument. But she still claims that the court should have awarded her a portion of the cash from John's likely liquidation of these future stock awards. A court cannot award property that does not exist; and cash from the potential liquidation of future stock awards is an expectancy that the trial court could not have awarded.[28] Kathryn does not show that the court's division of John's AREE stock awards led to an unfair distribution of the marital estate.

Kathryn also challenges the property distribution fairness on these grounds: (1) the trial court ordered the parties to sell their home, so she will not have a home to live in; (2) the expectation that John will continue as senior vice

---

[28] In re Marriage of Herrington, 85 Wn. App. 613, 624, 935 P.2d 1357 (1997).

president at AREE means he will continue contributing to his retirement, while her only retirement will be 50 percent of the 401(k) awarded to her with a value at trial of $100,000 and any contribution she chooses to make from her maintenance award; (3) John may continue to work past the age of 65 and, at that point, would earn 100 percent of all salary and bonus dividend earnings, while she has no earnings now and is unlikely to have any future earnings because of her lack of a college degree and work history; (4) John will continue to benefit from his employer-provided health insurance while she will have to pay for her own health insurance after her COBRA insurance benefits through John's employer expire.

None of these arguments shows that the trial court distributed the property unfairly. The court required that the parties sell the house to pay community debt but ordered that John pay any remaining community debt. The fact that Kathryn will not financially benefit further from John's retirement fund, from the possibility of him working beyond the age of 65, or from his employer-provided health care after her benefits expire, flows from the marriage dissolution. And other than her lack of a college education and work experience, she does not explain why she is "unlikely to have any future earnings." Kathryn does not show that the trial court abused its discretion when it distributed the parties' property.

*B. Spousal Maintenance Award*

Next, Kathryn claims the court awarded inadequate maintenance to her for a number of reasons. We again disagree.

Washington's spousal maintenance statute requires that the trial court consider the following in making a maintenance award in a dissolution case:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage or domestic partnership;
> (d) The duration of the marriage or domestic partnership;
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.[29]

First, Kathryn contends that the trial court should have classified John's future restricted compensatory stock awards as income for purposes of the spousal maintenance award. She asserts that because Washington law allows a court to consider exercised stock options in determining child support and other

---

[29] RCW 26.09.090.

jurisdictions have drawn no distinction between the definition of income for maintenance purposes and child support purposes, future compensatory stock awards are income for purposes of spousal maintenance. Consequently, she claims that the trial court erred in concluding, "Income [John] receives as a result of the liquidation of AREE restricted stock awards should not be included in his income for determining spousal maintenance payable to [Kathryn]."

But the stock awards themselves as opposed to the proceeds from liquidation of those awards are property, not income.[30] And the trial court has broad discretion in issuing a maintenance award. The court adopted a formula to determine Kathryn's maintenance. It may exclude from the formula income John receives from liquidating future stock awards so long as the formula produces a fair award. This court focuses on the result produced by the formula, not the elements included by the trial court.

Here, the court ordered John to pay Kathryn spousal maintenance equal to 50 percent of his $360,000 gross annual salary plus 50 percent of his $100,000 gross annual bonus for 10 years. This should produce $230,000.00 or more of maintenance each year. Based on the court's finding that Kathryn is 52, unemployed, did not work outside of the home during the marriage, and has no

---

[30] See In re Marriage of Langham, 153 Wn.2d 553, 564-65, 106 P.3d 212 (2005) (stating that "there can be little doubt that stock options are property" and noting that stocks and stock options are distinct only because they are converted at different times).

current source of income, a maintenance award equal to one-half of John's gross annual salary and his bonus does not produce an unfair disparity in the parties' economic circumstances showing an abuse of discretion. The trial court did not abuse its discretion by not including in its maintenance formula cash realized by John's liquidating his future restricted AREE stock awards.

Second, Kathryn claims we should reverse her maintenance award because the trial court did not make findings of fact about each of the statutory factors listed in RCW 26.09.090. The court found that Kathryn is 52, unemployed, has not worked outside of the home during the marriage, and has no current source of income. She correctly notes that the court did not make findings of fact about the length of the marriage, her standard of living during the marriage, her lack of a college education, or her physical and emotional condition. But nothing requires that the trial court make written factual findings about each of the factors RCW 26.09.090 lists.[31] Our case law requires only that the court consider the listed factors. Kathryn does not show that the court did not do this.

She also asserts that substantial evidence does not support the amount and duration of the trial court's maintenance award. But amount and duration are not factual findings that substantial evidence must support. As we have stated,

---

[31] In re Marriage of Mansour, 126 Wn. App. 1, 16, 106 P.3d 768 (2004).

an appellate court reviews a trial court's maintenance award for an abuse of discretion based on whether the trial court's award created a significant disparity in the parties' economic circumstances. Kathryn has not made this showing.

Last, she appears to claim that because the division of property left John in a better future financial positon, the trial court should have compensated her for this disparity in its maintenance award. But, as we have discussed, the trial court did not abuse its discretion in distributing the marital estate. And Kathryn cites no authority requiring that a trial court equalize the parties' property distribution with its maintenance award. Kathryn does not show that the trial court abused its discretion with its maintenance award.

<u>Restraining Order</u>

Finally, Kathryn asserts that the trial court erred in concluding that it lacked authority to enter a restraining order. We disagree with her characterization of the proceedings.

When entering a marriage dissolution decree, a court must "make provision for any necessary continuing restraining orders including the provisions contained in RCW 9.41.800, [or] make provision for the issuance within this action of the restraint provisions of a domestic violence protection order under

chapter 26.50 RCW."[32] "[T]he court has broad equitable powers in family law matters."[33] "A trial court has great flexibility in awarding equitable relief."[34]

Here, Kathryn first asked the trial court to enter a "restraining order" in her trial brief. She stated, "RCW 26.50.010 allows for the entry of a restraining order when there has been a pattern of domestic violence. . . . She respectfully asks for entry of a restraining order." During a pretrial hearing, John's trial counsel asked that the court strike Kathryn's request for a restraining order because she did not make this request in her petition, the parties had not done relevant discovery, and she requested a restraining order authorized by chapter 26.50 RCW, providing for domestic violence protection orders (DVPO). John's counsel asserted that Kathryn could follow the procedures for seeking a DVPO in a separate proceeding. His counsel also stated that John would be prejudiced by entry of a restraining order that would impact his personal liberty without more than a few days' notice before trial.

Although Kathryn cited chapter 26.50 RCW in her trial brief, her trial counsel clarified that Kathryn was not asking for a DVPO but was instead requesting a restraining order under chapter 26.09 RCW. The trial judge stated,

[32] RCW 26.09.050(1).
[33] In re Marriage of Morris, 176 Wn. App. 893, 903, 309 P.3d 767 (2013).
[34] Rabey v. Dep't of Labor & Indus., 101 Wn. App. 390, 396, 3 P.3d 217 (2000).

> [I]f [Kathryn] wishes to seek a restraining order under chapter 26.50 RCW [she is] certainly free to do so but [she]'ll need to file another petition under a new cause number. . . .
>
> In the meantime, though, I don't see that we are prepared here or that at least nothing in the exhibits and nothing I've read would prepare me to rule on that. And I don't think I have the authority unless—well, unless for some reason the other case were assigned to me, the new restraining order case. So let's just proceed on the pleadings that we have. And to summarize the motion to—I don't know if we need to strike a request for a petition—for a restraining order but I think it's clear to everybody that the petitioner has the right to do whatever she thinks is available but it won't be something decided in the course of this trial. It would be decided under another proceeding under 26.50.

The trial court's reference to chapter 26.50 RCW when denying Kathryn's request for a restraining order makes its oral ruling unclear. But in its findings and conclusions about a marriage, it stated that neither spouse requested a protection order and for this reason denied Kathryn's request for a restraining order. The court concluded,

> The request for a Restraining Order is not properly before the court because it exceeds the relief requested in the Petition. The court makes no findings or conclusions regarding any claimed basis for a Restraining Order and denies the request without prejudice to Petitioner's right to seek a Domestic Violence Protection Order under RCW 26.50 by separate action.

The court's written ruling makes clear that it made a discretionary decision to deny Kathryn's request for a restraining order, not a DVPO, because she requested it late in the proceedings without asking to amend her petition. John asserts that the trial court properly decided not to consider the issue because Kathryn did not comply with CR 15(a) and amend her petition. CR 15(a)

provides that generally a party may amend her pleading only with the consent of the court or the adverse party. Because Kathryn did not ask to amend her petition to include her request for the restraining order and because trial courts have broad discretion in dissolution proceedings, the trial court did not abuse its discretion by declining to consider a request that exceeded the relief requested in the petition.

### Attorney Fees

Kathryn asks that this court award her attorney fees on appeal, citing RCW 26.09.140 and RAP 18.1(a). RAP 18.1(a) allows a reviewing court to award a party reasonable attorney fees if applicable law grants a party the right to recover them. RCW 26.09.140 authorizes a trial court and an appellate court to grant attorney fees and costs based on need and ability to pay. Because Kathryn does not show that she has a need for John to pay her attorney fees on appeal, we decline to award her fees.

### CONCLUSION

We affirm. Kathryn fails to prove that the court erred in finding the postnuptial agreement unenforceable. She also does not show that the trial court

-20-

abused its discretion with its distribution of property and debts, its award of spousal maintenance, and its denial of her late restraining order request.

WE CONCUR: