COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Marriage of | ) | No. 38790-9-III |
| | ) | |
| MARINA P. WILCOX, | ) | ORDER DENYING IN PART |
| | ) | AND GRANTING IN PART |
| Respondent, | ) | MOTION FOR |
| | ) | RECONSIDERATION AND |
| v. | ) | AMENDING OPINION |
| | ) | |
| MATTHEW EMERY WILCOX, | ) | |
| | ) | |
| Appellant. | ) | |

THE COURT has considered appellant's motion for reconsideration and is of the opinion that the motion should be denied to the extent of changing the substance of the opinion and reversing the superior court, and that it should be granted to the extent of making revisions to the opinion:

IT IS ORDERED, the appellant's motion for reconsideration of this court's decision of April 27, 2023, is hereby granted in part and denied in part and the opinion is amended as follows.

Matthew Wilcox worked as production manager for Graham Packaging at the beginning of the parties' 1994 marriage. He left employment at Graham Packaging in 2008. Through his employment at Graham Packaging, he earned an annual salary of $75,000, held access to a 401(k) plan, and a accrued a deferred vested pension. As of July 4, 2015, the approximate date of the parties' separation, Wilcox's 401(k) plan was valued at $114,307.67. He was scheduled to receive monthly benefits of $734.45 from the deferred vested pension beginning December 1, ~~2022~~ 2032, but could elect to begin drawing benefits from the pension as early as December 1, 2022. The value of the monthly benefit payments, if they began being withdrawn on December 1, 2022, is unknown. Such

payments, however, would amount to less than $734.45 as they would begin 10 years earlier than scheduled.

Opinion at 3.

Income from Premier Power Sports paid some of Matthew Wilcox's personal expenses and $4,000 per year ~~month~~ of community expenses. Premier Power Sports paid for a Dodge Ram pickup truck Wilcox used for business, vehicle insurance, gasoline, and telephone. Once the parties separated, the business paid the spousal maintenance owed by Wilcox to Marina Palomarez and Wilcox's attorney fees and expert witness fees. Wilcox bartered with service providers for car repairs and dental care.

Opinion at 5.

The trial court concluded that Matthew Wilcox could earn $100,000 annually as manager of Premier Power Sports, despite his reporting income of only $34,000 to $40,000 per year. The trial court did not wish, however, to overrule Wilcox's business judgment as to the amount of earnings to retain in the business. Thus, the court only assigned $40,000 to Wilcox as gross yearly income for purposes of evaluating spousal maintenance. The court ordered Wilcox to pay $1,000 per month in spousal maintenance through 2022. Beginning in December 2022, Wilcox's pension from Graham Packaging ~~would~~ could then pay ~~$734.45 in~~ monthly benefits in an unknown amount, but less than $734.45, to Marina Palomarez. Thus, the court intended the $1,000 monthly maintenance to supplement Palomarez's income until she could live off the retirement income.

Opinion at 6.

RCW 26.09.090(1)(a) lists as one factor the ability of the party seeking an award to meet her needs. Nevertheless, the statute nowhere precludes an award of maintenance only if the proponent of maintenance establishes need. RCW 26.09.090 does not suggest that any one factor controls the dispute. We should not erase from the statute several factors in order to strictly follow one factor. If the statute demanded that the requesting party show need, some of the other factors listed in the statute would fall fallow. RCW 26.09.090 also requires ~~reflection on the standard of living during the marriage and the duration of the marriage. The statute demands~~ consideration of the financial condition of the spouse against whom the other seeks maintenance.

2

Opinion at 13-14.

To repeat, Matthew Wilcox contends a divorcing spouse is entitled to maintenance only to the extent necessary. He cites *Kelso v. Kelso*, 75 Wn.2d 24, 448 P.2d 499 (1968); *In re Marriage of Valente*, 179 Wn. App. 817, 825 (2014); *In re Marriage of Rouleau*, 36 Wn. App. 129, 672 P.2d 756 (1983) in support of this proposition. ~~He does not expressly declare what he deems necessary for Marina Palomarez.~~

Opinion at 15.

*Kelso v. Kelso*, despite being a Supreme Court decision, ~~no longer~~ holds precedential value <u>only with regard to RCW 26.09.090's factor concerning the requesting spouse's need</u> because the court issued the ruling before the adoption of the 1973 Marital Dissolution Act, from which RCW 26.09.090 arises. No similar statute that demanded the divorce court's consideration of multiple factors existed in 1968. <u>As the *Kelso* court was required to consider the requesting spouse's need, one may properly rely on *Kelso* as authority when it comes to RCW's 26.09.090's factor regarding the requesting spouse's need.</u>

Opinion at 16.

Matthew Wilcox argues that the couple did not maintain a long-term marriage, but he does not challenge the dissolution court's finding of a long-term accord and he previously had conceded the couple maintained a long-term marriage. Although the court granted an amount significantly higher than Marina Palomarez's bare needs, the ~~amount was consistent with the parties' earlier standard of living. The~~ amount equalized the parties' income and~~. The amount~~ ends at the approximate time of Wilcox's retirement.

Opinion at 18.

PANEL: Judges Fearing, Lawrence-Berrey, Staab

FOR THE COURT:

_____
GEORGE B. FEARING, Chief Judge

3

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of | ) | |
| | ) | No. 38790-9-III |
| MARINA P. WILCOX, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| MATTHEW EMERY WILCOX, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — This marital dissolution case reaches our court for the second time. Previously, former wife Marina Palomarez appealed the superior court's award of spousal maintenance as being too thin. We concluded that the dissolution court miscalculated former husband Matthew Wilcox's income and remanded to reconsider the income and possibly adjust the maintenance amount and division of assets and liabilities. On remand, the superior court upheld the original division of assets and liabilities but added an equalization payment, determined Wilcox's estimated income to be $156,000 per year, and reassessed the spousal maintenance award under RCW 26.09.090. The court ordered Wilcox to pay Palomarez maintenance of $4,000 per month for the duration of eleven years.

Matthew Wilcox now appeals. We affirm because the dissolution court did not abuse its wide discretion.

FACTS

Two Yakima County Superior Court judges have issued decisions in this marital dissolution. The first judge, Judge Doug Federspiel, conducted a trial in 2019, during which he entertained testimony of the parties and their witnesses and reviewed exhibits. On remand, Judge Elisabeth Tutsch did not entertain new evidence, but rather reviewed the transcript of the earlier trial testimony and the exhibits entered in the earlier trial. She then issued a 2022 order in light of this reviewing court's 2020 decision. When we refer to evidence in this opinion, we reference the testimony and exhibits presented to Judge Federspiel. When we refer to the dissolution court's findings of fact, we reference the second amended findings of fact entered by Judge Tutsch in February 2022. When we refer to the dissolution court's ruling or decision, we reference Judge Tutsch's ruling unless we specify otherwise.

Marina Palomarez and Matthew Wilcox, both now age 54, married in October 1994 and obtained a decree of dissolution in May 2019. Before marriage, Wilcox acquired a Bachelor's of Science degree from Washington State University with a minor in business. Palomarez graduated from high school and attended Heritage College for one year. The parties begat one child, purchased a family home, and purchased a

2

business known as Premier Power Sports, LLC. The couple dined out two to three times a week and took a vacation once a year.

US Bank loaned money to Matthew Wilcox and Marina Palomarez to secure the purchase of their home. The mortgage debt was $20,086 at the time of the first trial. Matthew Wilcox has since retired the debt.

In 1995 and 1996, Marina Palomarez worked as a receptionist. She worked part-time for a dentist in 1997. She left employment in 1997 to give birth to the couple's child. Matthew Wilcox and Palomarez agreed Palomarez would not work and would raise their daughter. Palomarez returned to work in 2003. In 2009, she started working as a receptionist for a pediatric dentist. In 2017, during the pendency of this marital dissolution, the dentist terminated her employment. She has since gained employment at Costco.

Matthew Wilcox worked as production manager for Graham Packaging at the beginning of the parties' 1994 marriage. He left employment at Graham Packaging in 2008. Through his employment at Graham Packaging, he earned an annual salary of $75,000, held access to a 401(k) plan, and a accrued a deferred vested pension. As of July 4, 2015, the approximate date of the parties' separation, Wilcox's 401(k) plan was valued at $114,307.67. He was scheduled to receive monthly benefits of $734.45 from the deferred vested pension beginning December 1, 2022.

In 2008, the parties purchased Premier Power Sports, a retail and repair shop for motorcycles, watercraft, and ATVs. The purchase price was $400,000 with a small down payment. The couple financed the purchase with $300,000 loaned to them by Matthew Wilcox's mother, Kathryn Hosack, at 5 percent interest. The seller of the business financed the remaining debt, which the couple has since paid in full. As of January 2019, the parties owed $250,000 to Hosack.

Matthew Wilcox has managed Premier Power Sports since its purchase. In 2014, the couple converted Premier Power Sports to a S corporation.

Premier Power Sports suffered during the Great Recession, but rebounded thereafter. Premier Power Sports garnered net income of $16,329 in 2011, $75,787 in 2013, $52,917 in 2014, $195,522 in 2015, $227,454 in 2016, and $208,863 in 2017. By the time of trial in 2019, Premier Power Sports had netted $16,000 per month. Despite this increase, Matthew Wilcox's salary as manager increased only nominally.

During all financial years, Matthew Wilcox only reported income from Premier Power Sports of $34,000 to $40,000 per year, regardless of the actual net income of the business, because the corporation, at the direction of Wilcox, retained a substantial portion of its earnings. Under tax rules, the S corporation does not pay taxes, but the owner of the corporation must pay income taxes on retained earnings. In 2017, Wilcox reported $39,891 in personal income, but he paid $38,812 in personal income taxes because Premier Power Sports garnered $167,390 in profits.

4

Income from Premier Power Sports paid some of Matthew Wilcox's personal expenses and $4,000 per month of community expenses. Premier Power Sports paid for a Dodge Ram pickup truck Wilcox used for business, vehicle insurance, gasoline, and telephone. Once the parties separated, the business paid the spousal maintenance owed by Wilcox to Marina Palomarez and Wilcox's attorney fees and expert witness fees. Wilcox bartered with service providers for car repairs and dental care.

The parties separated in July 2015. At the time of the first trial, Marina Palomarez earned $2,160.00 in monthly income. At that time, she inconsistently reported totally monthly expenses as first $3,090.98 and $4,740.00. When arguing the lack of need for spousal maintenance, Matthew Wilcox relies on the $3,090.98 amount. We do not resolve this discrepancy.

### PROCEDURE

In August 2015, Marina Palomarez filed to dissolve the parties' marriage. Matthew Wilcox paid $2,500 in temporary spousal maintenance and some child support until the child attended college.

The parties disputed the value of Premier Power Sports, and each party hired an expert to testify to its value. Scott Martin, Marina Palomarez's expert, appraised the business at $522,000 in 2015. Sue Price-Scott, Matthew Wilcox's expert, valued the business at $335,000.

The parties' first divorce trial occurred in January 2019. After reviewing testimony and exhibits, the dissolution court valued Premier Power Sports at $500,000 as of June 2015. The court awarded the business to Matthew Wilcox. The court awarded Marina Palomarez the couple's residence valued at $225,000. The court also awarded Palomarez Wilcox's 401(k) plan valued, as of July 2015, at $114,307.67. In all, the court awarded Wilcox property valued at $506,250 and Palomarez property valued at $381,166. The court assigned the debt owed to Kathryn Hosak to Wilcox.

The trial court concluded that Matthew Wilcox could earn $100,000 annually as manager of Premier Power Sports, despite his reporting income of only $34,000 to $40,000 per year. The trial court did not wish, however, to overrule Wilcox's business judgment as to the amount of earnings to retain in the business. Thus, the court only assigned $40,000 to Wilcox as gross yearly income for purposes of evaluating spousal maintenance. The court ordered Wilcox to pay $1,000 per month in spousal maintenance through 2022. Beginning in December 2022, Wilcox's pension from Graham Packaging would then pay $734.45 in monthly benefits to Marina Palomarez. Thus, the court intended the $1,000 monthly maintenance to supplement Palomarez's income until she could live off the retirement income.

In its written findings of fact, the dissolution court, per Judge Federspiel, wrote in 2019:

4. The parties' marriage is, by agreement of the parties and as a factual finding of the Court, categorized as "long-term" marriage, in excess of twenty years.

. . . .

13. Marina Wilcox has generally been gainfully employed on a fulltime basis throughout the marriage (with the exception of a period after the birth of their daughter (1998-2003)). Marina Wilcox enjoyed a variety of occupations generally centered around positions of data entry and/or receptionist. She is bilingual (English and Spanish) which provides her with a highly marketable skill set in the Yakima Valley (although she has made no apparent effort to market that skill to her financial advantage). Her future earnings should be higher if she actively pursues job opportunities with that unique skill set.

14. From calendar year 2011 through calendar year 2017, Marina Wilcox earned, on average, just over $30,000. The financial information on the record regarding Mrs. Wilcox's earnings in 2018 coupled with testimony support that average. From the evidence, the Court finds that Mrs. Wilcox is currently employable at a salary $30,000 gross per year plus benefits, and with a nominal amount of effort can secure more lucrative employment.

. . . .

84. Regarding spousal maintenance, factoring in the duration of the marriage (long-term), the Petitioner's need, the Respondent's ability to pay, their former lifestyle (which by all accounts was modest eating out just periodically on only one short vacation per year), the nature and extent of the community property, and the physical and emotional condition of the Petitioner, I am awarding spousal maintenance to the Petitioner in the amount of $1,000.00 per month beginning in February of 2019 through year-end 2022 at which time the fixed pension from Graham Packaging can be taken by the Respondent and transferred to the Petitioner (at its earliest December 2022) at which point the monthly balance from Mr. Wilcox's fixed pension shall be the [gross] amount of the Petitioners' [sic] spousal maintenance for the remainder of Mr. Wilcox's life, or the expiration of those fixed pension benefits, whichever comes first. If Mr. Wilcox dies, spousal support shall end and any death benefits from that fixed pension plan (if any) shall be payable to his estate. . . . I have factored in the ability of Marina Wilcox to seek out new employment either as a court reporter, or leveraging her bi-lingual skills which, in the Court's opinion, should reasonably increase her income sufficient for her to be self-sufficient with

7

> the addition of the future maintenance award as set forth above. And, I believe that given the fact that she remains in the family home with no mortgage payment, a car with no car payment, and the resources and income available to her, she should be in a position to maintain or exceed the parties' prior standard of living for a reasonable period of time and become self-supporting.

Clerk's Papers (CP) at 736-52 .

Marina Palomarez appealed. This court in *Palomarez* I addressed, in the published portion of the opinion, the superior court's valuation of Matthew Wilcox's income for the purpose of calculating spousal maintenance. *In re Marriage of Palomarez v. Wilcox*, 15 Wn. App. 2d 187, 191, 475 P.3d 512 (2020). This court concluded that the superior court erred in setting Wilcox's income at $40,000 per year and reversed the spousal maintenance award. This court applied the rule that when a business pays one spouse's expenses, those payments must be considered as income to the spouse. This court also followed the principle that retained earnings in a closely held corporation must count toward the managing spouse's income for purposes of spousal maintenance. This court remanded to the superior court for reconsideration of the spousal maintenance.

On appeal, Marina Palomarez also challenged the property division as unequal since she only received $381,166, while Matthew Wilcox acquired $506,250. This court expressed concern about the disparity especially when the business was the only income producing asset. This court also directed the dissolution court to readdress the property division.

Judge Federspiel had retired by the time of remand to the superior court from this court. Judge Tutsch, the dissolution's new presiding judge, issued a pretrial order on remand. The court wrote:

> 1. At this point, trial of the above matter will be based on the existing record from the Trial court and the Mandate from the Court of Appeals. No further testimony will be taken. Since neither party challenged the value of any assets or liabilities, the value of those assets and liabilities will remain as found by the original trial court at the time of separation.
> 2. The issues to be addressed at trial from the Mandate include determination of Respondent's income at the time of the original trial, spousal maintenance addressing RCW 26.09.090 factors at time of trial, [and] division of assets and liabilities.

CP at 160 (boldface omitted).

On remand, the superior court primarily affirmed the first trial judge's division of property and allocation of liabilities. The court, however, modified the award of Matthew Wilcox's Graham Packaging pension originally given in full to Marina Palomarez by dividing the pension in half. This change reflected Palomarez's community property interest in the pension and treated the asset as property to be divided rather than income to be substituted for spousal maintenance. The superior court also awarded Palomarez an equalization payment.

In second amended finding of fact 9, the court wrote:

> The division of community personal property described in the final order is fair (just and equitable).

CP at 853. Finding of fact 11 declares:

9

> The division of community debt described in the final order is fair (just and equitable).

CP at 854.

The superior court on remand analyzed Marina Palomarez's need for maintenance under the factors outlined in RCW 26.09.090. The court wrote in a lengthy finding of fact 13 titled "Spousal Support":

> <u>The financial resources of the party seeking maintenance, including separate or community property apportioned to her, and her ability to meet her needs independently:</u> The trial court apportioned Ms. Palomares [sic] the family home (at trial it was unencumbered by debt), a 401(k) retirement plan, a SERS Plan, State of Washington retirement plan, and a reliable vehicle. Ms. Palomares [sic] had no other separate property. Her employable salary is $30,000 annually.
>
> <u>The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment:</u> The trial court did not estimate an amount of time for retraining and there is no evidence that Ms. Palomares [sic] seeks retraining. The trial court found she had substantial experience working as a receptionist or performing data entry. She may realize higher income by marketing her bilingual skills.
>
> <u>The standard of living established during the marriage:</u> The family lived a secure, modest middle-class lifestyle. They owned a comfortable home. They drove reliable vehicles. Occasionally, they enjoyed out-of-town leisure trips and eating out. They acquired household furnishings, tools, and sport vehicles. They were able to maintain their lifestyle without acquiring debt. Instead, they used the business's social and financial capital to cover out-of-ordinary expenses, such as repairing vehicles and paying for travel for children's sports.
>
> <u>The duration of the marriage:</u> The parties agree they married in October 1994 and separated in July 2015. They had been married 20 years and 9 months at separation, but at the time of trial in January 2019 it was over 24 years.
>
> <u>The age, physical and emotional condition, and financial obligations of the spouse seeking maintenance:</u> Ms. Palomares [sic] was 51 at the time of trial. There was no evidence of any physical or emotional condition

limiting her ability to work. However, at her age and with her professional experience, her income earning potential is not expected to increase substantially from historical levels.

The ability of the spouse from whom maintenance is sought to meet his needs and financial obligations while meeting those of the spouse seeking maintenance: Mr. Wilcox is expected to work 15-20 years from the time of trial. There are no health concerns. The family's business was awarded to him. The business was valued at about $500,000. The business supported the community during the marriage, and the income increased steadily. After separation, the business grew substantially. Mr. Wilcox had no consumer debts and takes pride in living within his means, debt-free. There may be periods where Mr. Wilcox must re-invest business income due to meet cash flow needs. This court finds Mr. Wilcox's income for spousal maintenance purposes to be $156,000 annually or $13,000 gross per month.

Taking into account all the statutory factors, and since the Court of Appeals fully reversed the spousal maintenance award, the court believes spousal support should be set at $4,000 per month beginning February 1, 2019 and be payable on the first day of each month thereafter until Ms. Palomares [sic] turns 65, or she remarries, or either party dies, whichever occurs first.

CP at 854-55. Thus, the spousal maintenance award would likely continue for eleven years.

LAW AND ANALYSIS

Findings of Fact

Matthew Wilcox subsequently initiated this appeal. He challenges the spousal maintenance award and the imposition of the full debt owed to Kathryn Hosack on him.

Matthew Wilcox assigns error to findings of fact 9, 11, and 13. Nevertheless, Wilcox cites to finding 9 once in his brief without analyzing any error in the finding. In the argument section of his brief, he never cites to finding 11, but mistakenly cites to

finding 12 and fails to illuminate us on any error in finding 12. In the respective findings, the dissolution court found its division of property and allocation of debt to be just and equitable. Because of the lack of argument in support of the first two assignments of error, we do not address them.

Matthew Wilcox supports his assignment of error to finding 13 with extensive argument. We review this finding as part of our review of the spousal maintenance award entered.

Spousal Maintenance

Matthew Wilcox primarily argues on appeal that the dissolution court abused its discretion when setting the amount and duration of the maintenance award on remand. He asks that this appellate court set its amount and duration as this court deems just.

In assigning error, Matthew Wilcox argues that Marina Palomarez possessed no need for spousal maintenance. Wilcox contends that the dissolution court entered no finding of fact of need. In arguing the lack of need, Wilcox characterizes Palomarez's property award as "substantial" and emphasizes that the substantial allocation should allow her to live comfortably without a high income. Palomarez received the family residence without debt, the residence's contents, a vehicle, and Wilcox's 401(k) account. Wilcox will pay all community debt, already paid $77,000 in attorney fees for Palomarez, and already paid $100,000 in temporary maintenance from 2015 to 2022. According to Wilcox, new evidence established that Palomarez now garners $2,160.20 in monthly

income, excluding spousal maintenance, and incurs only $3,090.98 in total monthly

expenses. Thus, she only needed $930 per month, an amount less than awarded by the

first trial judge.

RCW 26.09.090 governs an award of spousal maintenance in a marital dissolution.

The statute declares:

> (1) In a proceeding for dissolution of marriage . . . , the court may grant a maintenance order for either spouse or either domestic partner. The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to:
> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage or domestic partnership;
> (d) The duration of the marriage or domestic partnership;
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

RCW 26.09.090(1)(a) lists as one factor the ability of the party seeking an award

to meet her needs. Nevertheless, the statute nowhere precludes an award of maintenance

only if the proponent of maintenance establishes need. RCW 26.09.090 does not suggest

13

that any one factor controls the dispute.  We should not erase from the statute several factors in order to strictly follow one factor.  If the statute demanded that the requesting party show need, some of the other factors listed in the statute would fall fallow.  RCW 26.09.090 also requires reflection on the standard of living during the marriage and the duration of the marriage.  The statute demands consideration of the financial condition of the spouse against whom the other seeks maintenance.

We recognize the whimsical nature of the word "need."  One individual's need may be another's luxury.

Many principles guide our review of the dissolution court's decision.  This court reviews a trial court's award of spousal maintenance for abuse of discretion.  The amount and duration of maintenance is limited by the vague requirement that the award be just, in light of all relevant factors.  *In re Marriage of Condie*, 15 Wn. App. 2d 449, 470, 475 P.3d 993 (2020); *In re Marriage of Valente*, 179 Wn. App. 817, 821, 320 P.3d 115 (2014); *In re Marriage of Bulicek*, 59 Wn. App. 630, 633, 800 P.2d 394 (1990).  Maintenance not based on a fair consideration of the statutory factors constitutes an abuse of discretion.  *In re Marriage of Anthony*, 9 Wn. App. 2d 555, 564, 446 P.3d 635 (2019).

Maintenance is a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time.  *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984); *In re Marriage of Valente*, 179 Wn. App. 817, 821 (2014).  Permanent maintenance awards are disfavored.  *In re Marriage of Valente*, 179

Wn. App. 817, 822 (2014); *In re Marriage of Coyle*, 61 Wn. App. 653, 657, 811 P.2d 244 (1991). But the dissolution court does not abuse discretion when awarding lifetime maintenance when the party seeking maintenance will not be able to contribute significantly to her own livelihood. *In re Marriage of Valente*, 179 Wn. App. 817, 822 (2014); *In re Marriage of Mathews*, 70 Wn. App. 116, 124, 853 P.2d 462 (1993); *In re Marriage of Morrow*, 53 Wn. App. 579, 770 P.2d 197 (1989). Ultimately, the court's main concern must be the parties' economic situations post-dissolution. *In re Marriage of Anthony*, 9 Wn. App. 2d 555, 564 (2019).

While the dissolution court must consider the factors listed in RCW 26.09.090(1), the court need not enter specific factual findings on all of the factors. *In re Marriage of Condie*, 15 Wn. App. 2d 449, 470 (2020); *In re Marriage of Anthony*, 9 Wn. App. 2d 555, 564 (2019). The statute merely requires the court to consider the listed factors. *In re Marriage of Condie*, 15 Wn. App. 2d 449, 470 (2020).

To repeat, Matthew Wilcox contends a divorcing spouse is entitled to maintenance only to the extent necessary. He cites *Kelso v. Kelso*, 75 Wn.2d 24, 448 P.2d 499 (1968); *In re Marriage of Valente*, 179 Wn. App. 817, 825 (2014); *In re Marriage of Rouleau*, 36 Wn. App. 129, 672 P.2d 756 (1983) in support of this proposition. He does not expressly declare what he deems necessary for Marina Palomarez.

In *Kelso v. Kelso*, 75 Wn.2d 24 (1968), the Supreme Court modified an award of spousal maintenance granted the wife. The divorce court ordered monthly maintenance

15

until either party died or the wife remarried. The Supreme Court ordered termination of maintenance when the youngest child graduated from high school. The court followed, if not adopted, the rule that the proponent of the award must establish need for alimony. The wife held skills, by which she could gain employment as a bookkeeper or secretary. The court did not analyze the wife's expenses or potential income.

*Kelso v. Kelso*, despite being a Supreme Court decision, no longer holds precedential value because the court issued the ruling before the adoption of the 1973 Marital Dissolution Act, from which RCW 26.09.090 arises. No similar statute that demanded the divorce court's consideration of multiple factors existed in 1968.

*In re Marriage of Valente*, 179 Wn. App. 817 (2014) supports Marina Palomarez's, not Matthew Wilcox's, position. The dissolution court awarded the wife $3,772,642.53 of community property and $484,233 of separate property. The court also ordered the husband to pay the wife maintenance of $10,000 per month for seven years until she turned 62 years old, then $1,000 per month until she turned 72 years old, and then $100 per month until his death, her death, or her remarriage. Under Washington law, the court may not award maintenance to one spouse, after entry of the dissolution decree, based on changed circumstances without a pending obligation to pay at least a $1 per month in maintenance.

On appeal, in *Marriage of Valente*, the husband did not challenge the maintenance award of $10,000 per month until the wife turned 62 years old. The husband argued that

the other two tiers of maintenance were simply a vehicle to allow the court to retain jurisdiction over the parties. According to the husband, a person who receives $3.7 million in assets has no need for maintenance. His concession to the first tier of maintenance was inconsistent to his claiming a lack of need for the other two tiers. This court, over the objection of the husband, affirmed the award of maintenance of $1,000 per month during the decade that the wife was age 62 to 71. This court reversed the third tier award after age 71 because of the placeholder nature of the $100 per month award. The decision overall confirms that the receiving spouse need not establish need for an award.

*In re Marriage of Rouleau*, 36 Wn. App. 129 (1983), on which Matthew Wilcox also relies, also entailed the reviewing court reversing a nominal award of maintenance imposed for the purpose of retaining jurisdiction in the event the receiving spouse's medical condition worsened. The decision employs the Supreme Court's wording in *Kelso v. Kelso* to the effect the court may not award maintenance without a need. But this court did not decide the disputes based on this purported principle. In *Rouleau*, the husband suffered an aneurysm, and the dissolution court imposed a nominal amount of maintenance in the event his condition would worsen. *Dakin v. Dakin*, 62 Wn.2d 687, 384 P.2d 639 (1963), *Endres v. Endres*, 62 Wn.2d 55, 380 P.2d 873 (1963), and *Mose v. Mose*, 4 Wn. App. 204, 480 P.2d 517 (1971) were all decided before the 1973 dissolution act.

Recent cases lead to an affirmation of the Wilcox-Palomarez dissolution court. In *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 421 P.3d 1046 (2018), the wife, not the husband, challenged on appeal the award of maintenance to her. This court held that an award of $10,000 a month for six years was not an abuse of discretion. The dissolution court awarded this sum despite the wife's demonstrated ability to support herself.

In *In re Marriage of Bulicek*, 59 Wn. App. 630 (1990), the husband complained that the dissolution court granted maintenance to the wife until his retirement. This court affirmed because of the long-term marriage and the wife's income not sustaining her former standard of living.

We might have set the spousal maintenance amount lower and the duration shorter if we sat as the trial court. Nevertheless, we owe the dissolution court discretion in determining a just award, admittedly a vague standard of review. We conclude that the court established an amount within its bandwidth of discretion.

Matthew Wilcox argues that the couple did not maintain a long-term marriage, but he does not challenge the dissolution court's finding of a long-term accord and he previously had conceded the couple maintained a long-term marriage. Although the court granted an amount significantly higher than Marina Palomarez's bare needs, the amount was consistent with the parties' earlier standard of living. The amount equalized the parties' income. The amount ends at the approximate time of Wilcox's retirement.

Marina Palomarez may have been able to pursue additional education at an earlier age or opened her own business, but the parties decided that Palomarez would remain at home for a limited number of years to raise the child. Child rearing is a difficult profession. Palomarez's devotion to the couple's child freed Matthew Wilcox to open and conduct a business. Palomarez continued to raise the child after separation.

To repeat, Matthew Wilcox also contends the dissolution court failed to enter any finding of fact as to Marina Palomarez's need for spousal maintenance. We disagree. The court's finding of fact 13 declares that the court considered Marina Palomarez's "ability to meet her needs independently." CP at 854. Later the same lengthy finding reads that the court considered Matthew Wilcox's ability to meet his own needs "while meeting those of" Palomarez. CP at 855. The findings could have been more detailed, but they sufficed. Regardless, the trial court did not need to enter any specific finding.

In *In re Marriage of Condie*, 15 Wn. App. 2d 449 (2020), the dissolution court did not enter an express finding as to the wife's need for spousal maintenance. Nevertheless, this court affirmed an award of $6,500 per month for three years because the trial court, in the findings and conclusion, wrote that it considered the factors in RCW 26.09.090.

Matthew Wilcox next argues that the Yakima County Superior Court abused its discretion by ordering a maintenance award that works as a vehicle to distribute portions of his future income to Marina Palomarez. In one sense, spousal maintenance always distributes a portion of the paying spouse's future income since most paying spouses use

periodic income to pay periodic maintenance. Regardless, we might agree with Wilcox's argument if the record showed that the dissolution court projected Wilcox's or Premier Power Sports' future income streams for purposes of maintenance or if the court included in the maintenance award a percentage of Premier Power Sports' income. When assessing a requesting spouse's need for a maintenance award, earning capacity is not a divisible asset. *In re Marriage of Leland*, 69 Wn. App. 57, 72, 847 P.2d 518 (1993). Matthew Wilcox's dissolution court never calculated future earnings for purposes of an award of maintenance, and it never declared that it intended to redistribute some of Wilcox's future income. Assuming the court considered prospective income of the business, it did so only in the context of valuing the company.

We also repeat that the future earning capabilities of the respective spouses must be considered when awarding maintenance. *Stacy v. Stacy*, 68 Wn.2d 573, 576, 414 P.2d 791 (1966). When the parties maintain a great disparity of earning power between the spouses in a long-term marriage, maintenance may counter the post-dissolution economic disparity between them. *In re Marriage of Bulicek*, 59 Wn. App. 630, 635 (1990).

In support of his contention that the dissolution court redistributed future income, Matthew Wilcox cites *In re Marriage of Barnett*, 63 Wn. App. 385, 818 P.2d 1382 (1991). The husband assigned error to the trial court's decree demanding that he pay $500 monthly maintenance when the wife's monthly expenses were $860 and her income without maintenance was $833. This court affirmed in theory, but limited the award until

20

the date that the husband would begin to pay interest on a property award. This court read the trial court record as establishing that the trial court intended the maintenance award as an attempt to distribute to the wife her share of the community business.

We read *Marriage of Barnett* to preclude the dissolution court from using maintenance to split the parties' property. This concept differs from distributing one spouse's income to the other. We also question the validity of *Barnett*'s ruling when many other cases hold that the trial court may consider the property division when determining maintenance and may consider maintenance in making an equitable division of the property. *In re Marriage of Anthony*, 9 Wn. App. 2d 555, 566 (2019); *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 483 (2018); *In re Marriage of Estes*, 84 Wn. App. 586, 593, 929 P.2d 500 (1997).

Matthew Wilcox relatedly maintains that, by ordering a long-term maintenance award, the Yakima County Superior Court impermissibly "double dipped" also in violation of this court's ruling in *Marriage of Barnett*, 63 Wn. App. 385 (1991). We deem this argument to only clothe the earlier argument in different adornments.

Matthew Wilcox's dissolution court granted Marina Palomarez an equalization payment to balance the distribution of assets among the spouses. Thus, a contention that the court wanted to increase maintenance to offset a higher award of assets to Wilcox conflicts with the record.

Finally, according to Matthew Wilcox, the dissolution court failed to adequately consider the tax implications of its ruling in light of the Tax Cuts and Jobs Act of 2017 (Act). The Act changed the former rule of allowing the payer spouse to deduct alimony or separate maintenance payments from income and including such payments in the income of the receiving spouse. *CLARIFICATION: Changes to deduction for certain alimony payments effective in 2019*, IRS, (Feb. 8, 2022), https://www.irs.gov/forms-pubs/clarification-changes-to-deduction-for-certain-alimony-payments-effective-in-2019. This argument contradicts the dissolution court record. Contrary to Wilcox's contention, the court knew of this change in the law and took tax liability into account when setting spousal support from estimated net income. Regardless, Wilcox cites no law establishing a need for the court to analyze tax consequences when calculating spousal maintenance. With the change in the law, Wilcox's income would only increase for purposes of assessing the maintenance award.

## Community Debt

The dissolution court assigned the parties' $250,000 community debt owed to Kathryn Hosack solely to Matthew Wilcox. Wilcox assigns error to this ruling. We do not know if he simply wishes the court to reduce spousal maintenance owed as a result of this allocation of debt or for this court to reverse the allocation and impose part of the debt on Marina Palomarez. We decline to do either.

The debt to Kathryn Hosack arises from the purchase of Premier Power Sports. Income from Premier Power Sports should go to reduce the debt. The dissolution court granted Matthew Wilcox the asset of the business. Allocating the debt to the owner of the attendant assets makes sense.

## Attorney Fees

Marina Palomarez requests that this court award her attorney fees for this appeal. Under RCW 26.09.140, the appellate court may, in its discretion, order a party to pay for the reasonable attorney fees and costs incurred by the other party in a marital dissolution. The statute, unlike other statutes, affords an award of fees based on need, not on who prevails in the appeal.

Marina Palomarez contends she cannot afford her attorney fees on appeal. She emphasizes that Matthew Wilcox initiated the appeal and he can afford to pay her attorney fees. Because the superior court on remand evenly divided the parties' assets after an equalization payment and because the superior court also awarded Palomarez an amount of spousal maintenance commensurate with her earlier standard of living, we decline Palomarez an award of fees on appeal.

## CONCLUSION

We affirm the superior court's distribution of debt and the award of spousal maintenance. We deny Marina Palomarez an award of attorney fees and costs on appeal.

No. 38790-9-III,
*In re Marriage of Wilcox*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____          _____
Lawrence-Berrey, J.                         Staab, J.